UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No.: 1:07CR42 (ESH) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **WILLIAM J. HEATON,** | : | |
| | : | |
| **Defendant.** | : | |

**MOTION OF UNITED STATES TO REDUCE DEFENDANT'S SENTENCE
PURSUANT TO SENTENCING GUIDELINES §§ 3E1.1 and 5K1.1**

The United States moves this Court to reduce the sentence otherwise applicable to defendant William J. Heaton by one-level due to his timely notice to the government of his intent to cooperate and plead guilty. U.S.S.G. § 3E1.1(b). The United States also moves this Court to reduce Defendant Heaton's sentence by an additional five levels to reflect his substantial assistance in the investigation and prosecution of others, including former U.S. Congressman Robert W. Ney. Id. at § 5K1.1. In support, the United States offers the attached memorandum.

**RESPECTFULLY SUBMITTED,**

WILLIAM M. WELCH II
Chief, Public Integrity Section

STEVEN A. TYRRELL
Chief, Fraud Section

   /s/ (Mary K. Butler)_____
Mary K. Butler
M. Kendall Day
Trial Attorneys
Public Integrity Section

U.S. Department of Justice
(202)616-7529
(202) 514-3003 fax

CERTIFICATE OF SERVICE

    I certify that on this first day of August, 2007, a copy of the foregoing motion and memorandum in support was delivered to John Nassikas, Esq., Counsel for Defendant Heaton, at [nassikas.john@arentfox.com](mailto:nassikas.john@arentfox.com) via the CM/ECF system.

                                                         /s/ Mary K. Butler
                                                      Mary K. Butler
                                                      Trial Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:07CR42 (ESH) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM J. HEATON, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' SUBSTANTIAL ASSISTANCE MEMORANDUM**

In support of the United States' recommendation of a five-level substantial-assistance departure for William Heaton, the government submits the following.

**I.   INTRODUCTION**

The plea papers and pre-sentence investigation report set forth in detail the facts underlying Heaton's offense and all relevant conduct. To provide context and explain Heaton's substantial assistance, we begin with a brief overview of Heaton's role within Congressman Robert Ney's conspiracy to commit honest services fraud.

Heaton, now 29, joined Congressman Ney's office in August 2001 as Ney's executive assistant. Prior to that, he had been a Congressional Page in high school and worked for the Clerk of the House upon graduating from college. As an executive assistant for Ney, Heaton essentially was tasked with following Ney around the Capitol and keeping him on schedule. In February 2002, despite Heaton's inexperience and youth (he was 23 at the time), Ney tapped Heaton to replace Neil Volz as Ney's chief of staff. According to contemporary news accounts, Heaton was the youngest chief of staff in Congress at the time. In selecting Heaton for this position, Ney confided in another cooperating defendant, Volz, that he valued Heaton's

inexperience and deferential attitude, especially where other, more seasoned candidates might "get up and walk out of dinner because it was too expensive" and violated the $50 per occasion maximum gift value.

Although Heaton carried the title of "Chief of Staff," his role in the conspiracy was more limited than that implied by the title. Importantly, at times Ney confided in Heaton his concerns about things or the reasons he was taking certain action, but Ney rarely allowed Heaton or any other member of his staff to act on his behalf in exercising his official power or influence absent Ney's direct involvement. Particularly regarding Ney's relationship with Abramoff and his lobbyists, Heaton served mostly as an active conduit for the things of value requested by Ney and the official acts requested of Ney. For example, Ney and Heaton admitted to accepting three trips from Abramoff - to play golf in Scotland, to gamble in New Orleans, and to vacation in Lake George, New York. In each case, Heaton was the person with whom Abramoff lobbyists Tony Rudy or Neil Volz first spoke about Ney participating in the trips. Similarly, when Abramoff requested official action from Ney, he often used his lobbyists to contact Heaton first. For example, when Abramoff sought Ney's assistance on behalf of a client seeking a visa to travel to the United States, it was Heaton who was first contacted by the Abramoff lobbying team. Thereafter, Heaton consulted with Ney about how to solve the visa issue and Heaton and Ney took steps to obtain this assistance for Abramoff's client.

As set forth in the plea agreement and factual basis, Heaton did not begin to knowingly participate in the Abramoff-Ney conspiracy until August 2002, notwithstanding that the conspiracy had been in full swing while Volz was Ney's chief of staff before Heaton joined Ney's office in August 2001. Heaton's knowing participation began with his trip to Scotland

with Abramoff and Ney in August 2002. To be sure, Heaton was an active participant in the conspiracy from that point forward, soliciting and accepting free or reduced price trips courtesy of Abramoff and Volz, free food and drink at Abramoff's restaurant Signatures, and free entertainment tickets. Heaton was not on the first trip to London where Ney received free gambling chips from the foreign businessman, but he was on the second trip in August 2003, and he received and witnessed Ney receiving thousands of dollars worth of gambling chips from the foreign businessman. Heaton was not involved in Ney's efforts to take official action on behalf of the foreign businessman, although he learned of those efforts.

In sum, the timing of Heaton's entry into the conspiracy and the action taken by Heaton during the conspiracy mean that he was not as culpable as Ney, Abramoff, or other members, but he was an important witness to conversations about prior events as well as Ney's motivations for certain actions he took in response to the various investigations and press scrutiny of Abramoff's lobbying activities.

## II. HEATON'S COOPERATION

While Heaton was the last to begin cooperating in the investigation of Congressman Ney, his assistance was timely and quickly proved substantial.[1] Prior to his direct cooperation in June 2006, Heaton had cooperated through his counsel by providing documents that the government had been unable to obtain from other sources, namely the unfiled travel disclosure reports for Heaton and another staff member from the August 2002 Scotland trip.

---

[1] Prior to the start of Heaton's direct cooperation, Volz, Tony Rudy, Abramoff, Michael Scanlon, and other staff members in Ney's office were cooperating in the investigation of Ney.

As part of his direct cooperation, Heaton acted proactively in the government's investigation of Ney and another at the direction of the FBI and the Public Integrity Section. In order to preserve his ability to cooperate proactively, Heaton repeatedly met with agents and prosecutors on the weekend and late in the evenings so that he could continue working for Ney without arousing suspicion. Ultimately, Heaton made a number of recorded calls over a roughly three-week period. Once Heaton made a recorded call with a person, all subsequent conversations with that person were recorded, which was a fairly heavy burden for Heaton. Heaton's recorded conversations with Ney took place during an approximately two-week period when Ney was largely out of town but Heaton was still employed by the Congressman, including in a 2 1/2-hour consensually monitored meeting Heaton had with Ney. Throughout his proactive cooperation, Heaton conscientiously followed the instructions given him by the FBI, notwithstanding that he was cooperating in an investigation of his one-time friend and mentor Bob Ney. The tapes made by Heaton captured important circumstantial evidence that statements Ney had made to others about matters material to the investigation were false or intentionally misleading.

Through many hours of debriefing, Heaton also provided valuable insight into Ney's corrupt activities, recounting conversations with Ney wherein Ney had made damaging admissions. For example, Heaton described a conversation with Ney that took place after newspapers began printing negative stories about Abramoff in February 2004. In light of the scrutiny of Abramoff, Ney told Heaton that he would begin paying for his own meals and drinks with a credit card at Abramoff's restaurant Signatures in an attempt to establish a paper trail that Ney paid for his bills there. In fact, Ney and Heaton had wined and dined at Abramoff's expense

for years. Bank records corroborated Heaton's anticipated testimony on this point, showing that Ney first began to charge items to his credit card following the negative scrutiny of Abramoff in February 2004. This and other admissions by Ney to Heaton made Heaton's credible testimony an important part of the prosecution of Ney.

In the government's view, Heaton's substantial assistance in the investigation and prosecution of Ney was critical to Ney's decision to admit his involvement in the corrupt relationship with Abramoff and the Foreign Businessman. Not only did Heaton provide additional corroboration for much of Volz's anticipated testimony, he also provided corroborating evidence of Ney's illicit relationship with the Foreign Businessman, a corrupt relationship which did not involve Volz or Abramoff. Multiple witnesses, including Volz, would have testified that Heaton was closer to Ney than any other staffer after Volz left Ney's office to work as a lobbyist for Abramoff. Because Ney knew he had confided in Heaton and that Heaton had observed and participated in certain aspects of Ney's corrupt relationships, Heaton's decision to cooperate in the case was likely an important factor in Ney's decision to resolve his liability with the government by pleading guilty.

As the Court is well aware, the separation of powers principles enshrined in the U.S. Constitution raise certain complications in a prosecution of a Member of Congress by the executive branch.[2] Given these evidentiary challenges and potential delays, Ney's agreement to

---

[2] One set of commonly mentioned complications is raised by the Speech or Debate clause in Article I, Section 6, Clause 1 of the U.S. Constitution, which precludes the introduction of direct evidence of legislative action by a Member of Congress and renders some of the legal issues arising under the clause subject to pre-trial appeal. For example, Ney admitted in his guilty plea that, as part of his corrupt relationship with Abramoff, he twice inserted statements into the Congressional Record that benefitted Abramoff and his gambling business. Had Ney proceeded to trial, the prosecution could have established Ney's *agreement* to insert the

plead guilty and Heaton's role in bringing about that agreement proved exceptionally important to the just and efficient resolution of the charges to be brought against Ney.

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

On February 26, 2007, Heaton pled guilty to conspiracy to commit honest services fraud. Unlike Volz and several other cooperators, the conspiracy to which Heaton pled did not include as an object aiding and abetting the one-year lobbying ban violations of former Congressional staffers because Heaton lacked knowledge about precisely what conduct was prescribed by the ban and to whom the ban applied.

---

Congressional Record statements, but the prosecution could not have shown that Ney *actually inserted* those statements.  See, e.g., United States v. McDade, 28 F.3d 283, 293 (3d Cir. 1994) (noting that the prosecution could not show that a legislative act had been performed, but it could show a promise to perform a legislative act in the future); United States v. Brewster, 408 U.S. 501, 528 (1972) (acknowledging that evidence that a Congressman had actually followed through with his illegal agreement would strengthen the case, but such evidence would be precluded under the law).  Thus, testimony and documents corroborating a legislator's corrupt agreement to take official action are crucial to a successful prosecution of a member of Congress.

As calculated by the Probation Office as well as the parties, Heaton's final offense level is 15 before applying any departure for substantial assistance pursuant to Section 5K1.1 of the Sentencing Guidelines. Because of the value we place on the assistance Heaton provided, the government recommends a five-level departure for substantial assistance, and that a sentence be imposed at the low end of level 10, which is within Zone B of the Guidelines. In accordance with the schedule of punishments established for Zone B sentences in U.S.S.G. § 5C1.1(e)(3), the government recommends home confinement to satisfy any term of incarceration imposed by the Court.

**RESPECTFULLY SUBMITTED,**

WILLIAM M. WELCH II
Chief, Public Integrity Section

STEVEN A. TYRRELL
Chief, Fraud Section

  /s/ (Mary K. Butler)_____
Mary K. Butler
M. Kendall Day
Trial Attorneys
U.S. Department of Justice
(202) 514-1412
(202) 514-3003 fax