HONORABLE ELLEN SEGAL HUVELLE, UNITED STATES DISTRICT JUDGE

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**FILED**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Docket No.: <u>CR-07-42-01</u> |
| | : | |
| vs. | : | SSN: |
| | : | |
| Heaton, William J. | : | Disclosure Date: <u>July 11, 2007</u> |

AUG 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### RECEIPT AND ACKNOWLEDGMENT OF
### PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government

(CHECK APPROPRIATE BOX)
( )    There are no material/factual inaccuracies therein.
( )    There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____         _____
**Prosecuting Attorney**                                                    **Date**

### For the Defendant

(CHECK APPROPRIATE BOX)
( )    There are no material/factual inaccuracies therein.
(✓)    There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_____  8/16/07    _____  7-25-07
**Defendant**            **Date**                **Defense Counsel  Date**

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>July 25, 2007</u>, to U.S. Probation Officer **Deborah Stevens-Panzer**, telephone number <u>(202) 565-1422</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

**FOR THE COURT**

**By:**    Gennine A. Hagar, Chief
United States Probation Officer

Arent Fox LLP / **Washington, DC** / New York, NY / Los Angeles, CA

# Arent Fox

**John N. Nassikas III**
202.857.6014 DIRECT
202.857.6395 FAX
nassikas.john@arentfox.com

July 25, 2007

BY EMAIL

Ms. Deborah Stevens-Panzer
Senior United States Probation Officer
United States Probation Office
333 Constitution Avenue, NW
Suite 2800
Washington, DC 20001

Re:    William J. Heaton, No. 07-CR-042

Dear Ms. Stevens-Panzer:

Thank you for making available to us a copy of your draft presentence report ("PSR") for
Mr. Heaton.  After reviewing the draft report, we have the following proposed corrections or
objections and respectfully request that you make the following changes.  For your convenience,
we have listed our objections and responses in the order in which they appear in the PSR and by
paragraph number.

**Charge(s) and Conviction(s) (Page 4, Paragraph 1)**

The draft PSR incorrectly states that the "criminal conduct charged in the Information occurred
between September 2001 and July 2006."  As reflected on page 4, paragraph 7 of the
Information, Mr. Heaton's participation in the charged conspiracy occurred "[f]rom in or about
August 2002 through in or about April 2004..."  The Factual Basis for the Plea Agreement
reflects these same dates, at page 3, paragraph 8.  Please correct the PSR to reflect that the Mr.
Heaton's participation in the conspiracy occurred from in or about August 2002 until in or about
April 2004.

**Charge(s) and Conviction(s) (Page 4, Paragraph 2)**

The draft PSR indicates, in apparent reference to paragraph 9 of the Plea Agreement, that the
"parties agreed neither will seek or advocate for or suggest an adjustment to or a departure or
variance from the Sentencing Guidelines."  Paragraph 9 of the Plea Agreement, however,
provides that the parties may advocate any adjustments or departures "explicitly set forth in this
agreement..."  Further, paragraph 12 of the Plea Agreement explicitly states that the government
"will file a motion for a downward departure pursuant to § 5K1.1 of the United States

SMART IN YOUR WORLD®

1050 Connecticut Avenue, NW
Washington, DC 20036-5339
T 202.857.6000  F 202.857.6395

1675 Broadway
New York, NY 10019-5820
T 212.484.3900  F 212.484.3990

445 S. Figueroa Street, Suite 3750
Los Angeles, CA 90071-1601
T 213.629.7400  F 213.629.7401

Ms. Deborah Stevens-Panzer
July 25, 2007
Page 2

Sentencing guidelines," if Mr. Heaton fully complied with the Plea Agreement and provided substantial assistance in the investigation and prosecution of others. Paragraph 12 further indicates that, as of the date of the Plea Agreement, the government anticipated filing such a motion. We therefore ask that the PSR indicate that the parties anticipate the government will file a motion for a downward departure pursuant to § 5K1.1 of the sentencing guidelines.

**Related Cases (Page 5, Paragraph 8)**

The draft PSR misspells Mr. Volz's name as "Voz."

**The Offense Conduct (Page 5, Paragraph 10)**

The draft PSR states that "Mr. Ney had Congressional staffers who ran his office." Mr. Heaton believes that this characterization is not accurate and not supported by the Factual Basis for the Plea. As indicated in paragraph 2 of the Factual Basis, a more accurate characterization is that "Mr. Ney had staffers who worked in his Congressional office." Please revise the PSR accordingly.

**The Offense Conduct (Page 5, Paragraph 11)**

The draft PSR states that Mr. Heaton's duties as Chief of Staff included, "approving, on behalf of Mr. Ney, the staff's receipts and use of tickets to sporting and entertainment events." In fact, Mr. Ney usually controlled such tickets directly, and Mr. Heaton only approved the use of tickets on Mr. Ney's behalf occasionally. Paragraph 2 of the Factual Basis reflects this fact by using the phrase "at times" to describe Mr. Heaton's approval, on Mr. Ney's behalf, of other staff members' receipt and use of tickets. Mr. Heaton therefore requests that the PSR be revised to read, "Mr. Heaton's duties as Chief of Staff included managing the personnel in Mr. Ney's office and, at times, approving, on behalf of Mr. Ney, the staff's receipt and use of tickets to sporting and entertainment events."

**The Offense Conduct (Page 6, Paragraphs 13 & 14)**

The draft PSR contains detailed descriptions of Mr. Michael Scanlon and Mr. Tony Rudy that are not contained in the Factual Basis for Mr. Heaton's plea. Although Mr. Heaton does not question the accuracy of these descriptions and recognizes that the details are likely drawn from the plea agreements of other conspirators, Mr. Heaton likewise cannot confirm these details. Indeed, Mr. Heaton was still in college in Virginia when, for example, "Mr. Scanlon joined Mr. Abramoff at a Washington, DC, office of a law and lobbying firm" in March 2000. Mr. Heaton requests that the PSR include offense information derived only from his plea documents.

**The Offense Conduct (Page 7, Paragraph 18)**

The final clause of this paragraph of the PSR states that "they praised Mr. Abramoff and his lobbyists." In fact, as reflected in paragraph 10(c) of the Factual Basis, Mr. Ney – not Mr.

Ms. Deborah Stevens-Panzer
July 25, 2007
Page 3

Heaton – met with and praised Mr. Abramoff and his lobbyists. Please revise the PSR accordingly.

**The Offense Conduct (Page 7, Paragraph 19)**

Paragraph 19 incorrectly implies that Mr. Heaton accompanied Mr. Ney on more than one trip to London in which the foreign businessman gave him gambling chips. The paragraph reads, in relevant part, "Then, on August 29, 2003, the three traveled to London for a one-night stopover and the foreign businessman again provided Mr. Ney, Mr. Heaton, and the other staff member with…" free gambling chips. Although Mr. Ney and the other staff member took two trips to London during which they received free gambling chips, Mr. Heaton was present only on the second trip. Mr. Heaton therefore requests that you delete the words "Then" and "again" from the sentence quoted above.

**The Offense Conduct (Page 8, Paragraph 21)**

The draft PSR indicates that Mr. Heaton "under-reported the costs paid by Mr. Abramoff" for the August 2002 trip. This characterization incorrectly implies that Mr. Heaton knew the costs paid by Mr. Abramoff at the time he filled out the disclosure forms. As indicated in paragraph 12(a) of the Factual Basis, however, Mr. Heaton under-reported "the value" – not the paid costs – of the trip. Mr. Heaton therefore requests that the final PSR state that Mr. Heaton "under-reported the value of the trip" – not the "costs paid by Mr. Abramoff."

**The Offense Conduct (Page 8, Paragraph 22)**

The draft PSR mistakenly refers to the "gold" expenses from the Scotland trip when it should refer to the "golf" expenses.

**The Offense Conduct (Page 8, Paragraph 23)**

The draft PSR mistakenly refers to Mr. Ney's 2002 Financial Disclosure Form in this paragraph, when it should refer to Mr. Ney's 2003 Financial Disclosure Form.

**Offender Characteristics (Page 11, Paragraph 46)**

The draft PSR indicates that Mrs. Heaton is employed as the confidential secretary to the Assistant Secretary of the Department of Commerce. Her correct job title is the Special Assistant to the Secretary of the Department of Commerce. Please revise the PSR accordingly.

**Offender Characteristics (Page 11, Paragraphs 46 & 47)**

The draft PSR first states, in paragraph 46, that Mrs. Heaton was unaware of Mr. Heaton's conduct "until the case was made public." The draft PSR then states, in paragraph 47, that Mrs. Heaton first discovered Mr. Heaton's "involvement" one week after their wedding in June 2006.

Ms. Deborah Stevens-Panzer
July 25, 2007
Page 4

These statements are in conflict, and neither statement is accurate. Mrs. Heaton knew about the investigation, her husband's legal representation, and some of the conduct at issue prior to the wedding. However, she did not learn the full extent and details of the conduct at issue until after the wedding. Mr. Heaton therefore requests that the sentence in paragraph 46 be revised to read, "Mrs. Heaton was unaware of his conduct at the time." Mr. Heaton requests that the sentence in paragraph 47 be revised to read that Mrs. Heaton, "learned the full extent of her husband's involvement in the lobbyist situation after their wedding in June 2006."

Mrs. Heaton has reviewed this section of the draft PSR and concurs with these suggested changes. Please contact her directly if you have any questions.

**Offender Characteristics (Page 13, Paragraph 55)**

The draft PSR indicates that Mr. Heaton became a volunteer literacy tutor in June 2007. Please revise the PSR to indicate that Mr. Heaton first became a volunteer literacy tutor for three years during college, and has now resumed his volunteer tutoring as of June 2007.

**Offender Characteristics (Page 13, Paragraph 56)**

The draft PSR indicates that Mr. Heaton holds two employment positions. However, Mr. Heaton's work at the International Spy Museum ended in May 2007 as a result of the project's completion. His current employment therefore consists only of the landscaping and gardening position as described in the draft PSR.

**Offender Characteristics (Page 13, Paragraph 57)**

The draft PSR incorporates a letter from Alyce Korba, Human Resources Officer at the Washington Theological Union. Ms. Korba's letter reflects a limited awareness of Mr. Heaton's discussions with the President of the Washington Theological Union regarding his legal situation and does not fully describe the circumstances of Mr. Heaton's employment and departure. The attached letter from the Very Reverend Louis Iasiello, President of the Washington Theological Union, more fully and accurately explains the circumstances of Mr. Heaton's employment by and departure from the Washington Theological Union. The letter includes the following:

> At our initial meeting Will was very honest about his status and his potential prosecution. He also expressed willingness to resign if, at any time, his employment at the Union might become negative to the institution… He resigned his consulting position before entering his plea before the Court, and did so, true to his character, to protect the well being of our institution…

> By the time of his departure, he had established himself as an indispensable part of our WTU family and all begged me to allow him to continue, despite his legal situation. I offered just such an option to Mr. Heaton, but, putting the needs and the welfare of the institution ahead of his own, he declined.

Ms. Deborah Stevens-Panzer
July 25, 2007
Page 5

We request that the final PSR include this information in lieu of the information provided in Ms. Korba's letter.

**Offender Characteristics, Financial Condition (Page 14, Paragraph 61)**

The draft PSR indicates that Mr. Heaton has $130,377 in "Cash" in a Thrift Savings Plan Account. In fact, this account is a retirement account, and Mr. Heaton cannot withdraw the account funds without incurring significant financial penalties. Mr. Heaton requests that the final PSR reflect that this account is a retirement account.

In addition, as of July 2007, Mr. Heaton's unpaid legal fees now total $140,582.64. Please update the PSR accordingly.

The draft PSR also indicates that Mr. Heaton has a monthly salary of $3,312. This figure is no longer accurate because, as indicated above, Mr. Heaton's employment at the International Spy Museum ended in May 2007. Mr. Heaton's current monthly net salary is about $800.

**Sentencing Options (Page 16, Paragraph 75)**

Mr. Heaton does not understand the meaning of the draft PSR's statement that the Court may consider the "additional condition" of "financial disclosure." Mr. Heaton requests that the final PSR clarify this statement.

**Sentencing Options (Page 17, Paragraph 79)**

Mr. Heaton paid the $100 special assessment on July 24, 2007, and a copy of the receipt of payment is attached. Please update the final PSR accordingly.

**Sentencing Options (Page 17, Paragraph 81)**

The draft PSR provides the government's monthly costs for imprisonment, community confinement, and supervision. Mr. Heaton requests that, if the figures are known to the Probation Office, the final PSR also provide the monthly costs of home confinement.

**Factors that May Warrant Departure (Page 17, Paragraph 83)**

The draft PSR states that the Probation Office has not received any information suggesting that a departure from the sentencing guidelines is warranted. However, paragraph 12 of the Plea Agreement explicitly states that the government "will file a motion for a downward departure pursuant to § 5K1.1 of the United States Sentencing guidelines," if Mr. Heaton fully complied with the Plea Agreement and provided substantial assistance in the investigation and prosecution of others. Paragraph 12 further indicates that, as of the date of the Plea Agreement, the government anticipated filing such a motion. We therefore ask that the PSR indicate that the

Ms. Deborah Stevens-Panzer
July 25, 2007
Page 6

parties anticipate the government will file a motion for a downward departure pursuant to §
5K1.1 of the sentencing guidelines.

We appreciate the time you have spent preparing Mr. Heaton's PSR and look forward to working
with you as his sentencing approaches.

Sincerely,

John N. Nassikas III

Enclosures

cc:        Mary Butler, Esq.
           Kendall Day, Esq.
           Tim Kane, Esq.



WASHINGTON THEOLOGICAL UNION

18 June 2007

The Honorable Ellen Segal Huvelle
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

**Re: United States v. William Heaton, Case No. 07-042**

Dear Judge Huvelle:

Your Honor:

By way of introduction I am the Very Reverend Louis V. Iasiello, OFM, Ph.D. Upon my retirement as the Chief of Chaplains for the United States Navy, Marine Corps and Coast Guard (23 June 07) I assumed the presidency of the Washington Theological Union (WTU).

Upon arrival I discovered that the position of Development Director was vacant. While at a dinner with a fellow clergyperson, it was mentioned that a brilliant young man was seeking temporary employment. I asked if he would vouch for the young man and he responded, "Unconditionally, Lou!" and so I requested Will Heaton's contact information. At our initial meeting Will was very honest about his status and his potential prosecution. He also expressed his willingness to resign if, at any time, his employment at the Union might become negative to the institution. We agreed that Will would be hired as a 'Consultant for Development,' a post he held from September through April, 2007. He resigned his consulting position before entering his plea before the Court, and did so, true to his character, to protect the well being of our institution. I would like to comment on the personal behavior, professional acumen, and strength of character I witnessed on an almost daily basis while he was a consultant to the WTU.

First off, Will is an incredibly gifted thinker who things strategically yet plans to cover both the tactical and operational needs of an institution or program. Second, Will is a true 'people person' and he related extremely effectively with staff, faculty and administrators, often healing wounds and division left by the last Development Officer. Extremely personable and highly likeable, all at the graduate school immediately warmed to Will and many for the first time in years offered to assist in the development activities of the school. Put simply, in the short period of a month, Will reestablished the

prominence of the development office and shortly thereafter, had others thoroughly involved in development activities. By the time of his departure, he had established himself as an indispensable part of our WTU family and all begged me to allow him to continue, despite his legal situation. I offered just such an option to Mr. Heaton, but, putting the needs and the welfare of the institution ahead of his own, he declined. Such was, and I'm sure still is the depth of character exhibited by this remarkable young man. Rarely did I encounter a person of his intellect, gifts, and character in more than two decades in the military service.

Your Honor, I cannot speak to the actions that lead to the accusations against Will Heaton but I can speak about the remarkable young man who came to work at the Washington Theological Union and transformed a dysfunctional office, built long lasting trust-filled relationships, and displayed nothing but a maturity, knowledge, faith and skill set that is rarely found in someone his age. To put it simply, hundreds of WTU family miss their 'development consultant' and regularly ask that he be reinstated at the earliest opportunity.

I would be most open to further discuss this issue or amplify any information or opinions expressed in this letter. Thank you, your honor, for taking the time to read this letter and take its contents under consideration.

Sincerely,

Very Reverend Louis V. Iasiello, OFM, Ph.D.
RADM, CHC, USN (Ret)




```
Court Name: District of Columbia
Division: 1
Receipt Number: 4616005739
Cashier ID: lfizer
Transaction Date: 07/24/2007
Payer Name: WILLIAM J HEATON
-----------------------------------
CRIMINAL DEBT
 For: WILLIAM J HEATON
 Case/Party: D-DCX-1-07-CR-000042-001
 Amount:        $100.00
-----------------------------------
CHECK
 Check/Money Order Num: 1076
 Amt Tendered:  $100.00
-----------------------------------
Total Due:       $100.00
Total Tendered: $100.00
Change Amt:       $0.00


Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged.  A
$45 fee will be charged for a
returned check.
```